Good morning. We're very happy to be on your beautiful island and to decide your cases and hear your wonderful arguments. Mr. Hodge, I'm glad you were able to make it on time. We will begin with argument in U.S. v. Williams. Mr. Hodge? Good morning, Your Honors. Tony George Hodge, Jr. for the appellant, Jermaine Williams. I would like to reserve seven minutes of my time for rebuttal. Granted. I would like to begin by stating what is so unique about this case is that the parties did not have a nuclear agreement. The government did promise orally that it would be lenient with the defendant. So we went ahead and we entered a plea, and the government had an objection in regards to the defendant not having an upward enhancement for involving a minor. So in the spirit of good fit, we didn't object to that either. So instead of the defendant being sentenced at the range of 18, the government also gave an additional one credit for extraordinary acceptance of responsibility. The guideline range was not disputed. It's 24 to 30, correct? That is correct, Your Honor. But I am saying all of this for the court to understand the state of mind and the mood between the government and the appellant. Because even the government didn't ask for more than 30 months, the top of the range. Precisely. And then the judge gave him 60 months. And so I'm saying all of that to say, Your Honor, that if the government, like how it argued in its brief, that the sentencing judge acted reasonably within the sentencing factors, it is inconsistent with the government also offering that extra one point to bring him down to a level 17. But doesn't it just mean, though, Counselor, that the court controls sentencing, not the government? I mean, clearly you had a deal with the government. The government adhered to that deal, but the court wasn't satisfied. The court thought that the government's recommendation of the top of the guidelines range was not appropriate, and the court thought a much more harsh sentence was the proper sentence. And that leads me to the other argument, the other problem with this case, Your Honor, because the government relied on speculation. Like, for example, the government indicated that the defendant had a prior conviction for armed robbery. That is not correct. He might have been arrested for robbery, but he was only convicted for disruption of property. That is clearly indicated in the pre-sentence report. The government did not challenge nor object to that. Also, the defendant at that time was 18 years of age, and he was probably maybe a year or two older than his accomplices. But the point is, he was not convicted of a prior robbery, only disruption of property. And he was given community service. He didn't complete all of his community service. He did some of it. Let's say the community service was probably about 210, and he probably did 57 short of it. But he was not held in contempt by the superior court. We have no information before this court to speculate or, I should say, to conclude why he did not complete his community service. I think the thing that got Judge Gomez particularly – that was the catalyst for most of the upwards – the second time your client was involved with a minor. Now, I don't know here what the role of the minor was. The only evidence I can see, or even allegation in the record, is that after the robbery, the minor, who was KC, received either $6,000 or half the proceeds. It's unclear which one it is. But your client pled guilty to aiding and abetting the commission of a robbery, correct? That is correct, Your Honor. Who aided and abetted – who was he aiding and abetting in the commission of a robbery? KC? Well, it's alleged that he – And what did KC do? Because I do not see, as a matter of evidence, in this record. And if it's not in this record, I don't know where the district court came to the conclusion that he had involved a minor in this robbery. And that was the nature of my third argument, Your Honor, because the record shows that my client split the money in half. The pre-sentence report – After the robbery. After the robbery. And Co-defendant Cruz got $6,000. She was the bank teller that told him when to come. The pre-sentence report clearly indicates that it was my client in broad daylight approached the ladies who was going to the ATM machine, grabbed a bag, and ran off. What did KC do in this? The only thing I know is at some point, KC got one half the proceeds. After the robbery. And some of the vehicles – two of the vehicles were owned jointly with him. It tells me that this individual may be 21 years of age but has a mentality of a minor. Your brief highlighted the fact that the minor was not involved in the robbery. But you didn't highlight at sentencing that you didn't make that claim. And there seemed to be a consensus at sentencing that the minor was relevant to the robbery, was involved in the robbery. And I think that played a big part in the district judge's decision. Because when we look at the nature of the charge – Do you deny the minor was involved with your client in the robbery? Your Honor, I don't have enough information to admit or deny anything. All I know is that the minor, after the fact, got some of the money. But he pled guilty to aiding and abetting the commission of a robbery. That is correct, Your Honor. You kind of abet somebody and the only somebody. Well, it could have been aiding and abetting the bank teller, I suppose. But the bank teller was not charged in court, for one. I don't believe he was charged in court. But at sentencing, you took no objection. It was a consensus that your client was involved with the minor. You can't deny you didn't object to that. I did not object to that. And I couldn't object to that because I do not deny any discovery. I was given information that he gave Casey some of the money. But since he was not charged with conspiracy, just aiding and abetting, was it accessory after the fact that he gave Casey some of the money? There's nothing to indicate. He just gave it to him out of the goodness of his heart. Well, it goes to his state of mind as to whether he's really an adult or whether he has a mentality of a minor himself. So what is wrong with the district judge, for purposes of 3552, is it 3552? Yeah. 3553. Taking into consideration that he was leading this minor astray in his criminal activities. Because you have to speculate to having specific facts to reach a conclusion, and that is a problem. Isn't a reasonable inference that a district judge can make? No. It was not a reasonable inference because there's no facts to support it. That's number one. Number two. I suppose one can say, now I'll go the other way now. One can say that it's really not speculation if indeed the thought or the belief is not challenged. One can assume then that the minor was involved in the robbery because that was not challenged before the district court. Because it was vague but enough to conclude that since the minor got the money, I had no reason, no basis to challenge whether he was involved when the facts is clear that the minor got some of the money. But for me to speculate as to he did not do it, he did not, all I know for sure there was no guns involved. The minor did not grab the money. The minor didn't drive any getaway vehicle. But the minor got some of the money. And if Mr. Jomi Williams is a plain idiot, I can't. You didn't deny that the minor was involved. You didn't deny it. I could not deny it. But I'm saying to the extent of his involvement, you've got to speculate. Well, you have a long time reserved on rebuttal. We'll get you back. Thank you. Mr. Potter. May it please the court. Good morning. Edward Potter for the United States. The sentencing judge gave the appellant, Mr. Williams, five years for committing a brazen daylight rap of a teller as she was walking to replenish a bank machine. And with all the facts that were before the sentencing judge, that sentence of five years was indeed a reasonable sentence. What facts in the record here justify a sentence twice as heavy as suggested by the guidelines? What facts in the record demand that type of punitive sentencing? The facts in the record, Judge, is many facts. That this was Mr. Williams' second offense involving a juvenile. That in the first offense that he was convicted of when he was a bit younger, he was given a sentence of probation, community service, that he did not complete. The court looked at the history and characteristics of this defendant and found him wanting to be frank with the court. The judge felt the need to have Mr. Williams or to deter any future crimes committed by this defendant. And the imposition of a five-year sentence goes directly to the court's belief that this young man was out of control. Not only that, Judge, but in sentencing Mr. Williams, the court found that Mr. Williams had no respect for the law. And he had no respect for the law in that this is the second time before the court. The second time before the court for the very same nature of the offense that he previously committed when he was 18 or 19 years old. And now here he is again back in front of this court for the same type of offense, using a minor again. Using a minor. Yes. I don't know if there's any support for using a minor. Well, having a minor. In either case. Having a minor involved in the offense. And I heard the question posed to Mr. Hodge as to, well, what role did this minor play? And to be frank here, the evidence before the sentencing, Judge, when the issue of the defendant, when the issue of Mr. Williams using a minor came up, there was no objection from Mr. Williams. And there was no objection because the facts was clear. The pre-sentence report gave Mr. Williams a two-level enhancement for involving a minor. Involving a minor. See, I do make a distinction, but maybe it's too fine a distinction. And I could be wrong. A minor was involved. Who involved who? We don't know. I don't know. Well, the testimony, when Mr. Williams advocated at sentencing, he indicated that he planned the robbery. There's no dispute in that. There's no dispute that he got the minor involved in this robbery. And if that was a big issue before the court, surely Mr. Williams' attorney would have jumped up and said, no, Your Honor, that is not the case. That is not what happened in this case. Let's return to the 3553A factors because the judge gave a substantial upward variance here. He doubled the top of the guideline range. Do you think the reasons that he gave would support such an enhancement? He mentions respect for the law over and over, and he mentions the same type of offense involving a minor over and over. But there wasn't an awful lot of analysis here, was there? I grant you that, Judge. There probably was not a whole lot of analysis that the court did. But still, the evidence before the court did show that this defendant had no respect for the law.  Minor involved, robbery involved. So clearly this court had something to go on when it made the determination that this defendant had no respect for the law. And also the seriousness of the offense. Again, it was daylight, robbery, $105,000. Clearly when the court looked at that also, the court considered the nature of that. It's a little different than breaking into a store when there's nobody there in the middle of the night and rifling through the cash register, is it not? It is a bit different, but the nature of the offense is still the same. It involves getting something for nothing. It involves trying to get money or trying to get property that does not belong to you. And the defendant committed that offense, and here he is now committing a similar offense. Arguably a more advanced, a more sophisticated offense. The court obviously put great value in that and thought that the punishment meted out to the defendant was reasonable. And again, given the facts, I don't think it was unreasonable at all. Should the district court be considering the leniency of a potential sentence in comparison to the statutory maximum, which he did in this case? Is that a fair thing for a district judge to do? I never saw it done before, quite frankly. Well, obviously the judge thought that the guidelines were inadequate to address this defendant and looked to the statute. And what, I'm sorry, Jerry? Looked towards the statute. Looked at the statutory maximum. Yes, but I've never seen and thought it was lenient in terms of what the statutory maximum is. I mean, is that a little cockeyed? Well, I wouldn't say it was cockeyed. I think that this sentencing judge had this defendant in front of him, and he really wanted to express to this defendant the clear errors of his witness. And he didn't find that the sentencing guidelines adequately addressed that. He looked at the 3553 considerations. He did his analysis, and the sentence that he came down with happened to be one-half what the statutory maximum sentence would have been. Again, was the court unreasonable in reaching that conclusion? Again, I say based on the facts of this case, based on the defendant, based on his history, based on his obvious disrespect for the law, the court was reasonable in coming to the conclusion that five years is sufficient. Well, you have to acknowledge that any violation of the law shows disrespect of the law, of the criminal law. Is that correct? This is true. All right, so what you're trying to tell us, you think we should uphold this sentence because there was disrespect for the law, which there is in every criminal sentencing, and this was done before. So that's what you're basing your argument on. No, disrespect of the law. The reminder was somewhat how involved. We don't really know how. And that's your best bet. That's your longest and strongest suit, as we say at Bridge. Well, not solely that the defendant showed disrespect for the law by breaking, by robbing the bank on this day, but that this defendant showed disrespect for the law by even when he was sentenced for his previous offense. And the law said, this is what you must do as a consequence of your being convicted of that previous offense, that this defendant did not do it. And the judge, that may have stuck in the judge's car, so to speak. And the judge said, well, he had an opportunity. He was given a lenient sentence. He did absolutely nothing to prove to the court or to anyone else that he took the situation that he was in seriously. That, I think, is the biggest issue that the court was focusing on when it said, shows disrespect for the law. Okay, so I see. So your best argument for affirming this, as far as I can see, is that he did it before. He did it this time. Any two-time loser is entitled to double a guideline sentence. No. Let me rephrase Brother Cowan's best argument. Let's see. Perhaps the best argument would be that the district judge carefully considered all of the facts of the offense and the characteristics of the defender and what had happened here and what had happened before, gave it close consideration, and then determined the appropriate sentence and the sentence was both substantively and procedurally reasonable. That's your best argument, isn't it? That is the best argument, Judge. I thought so. I don't know if I accept it, but I thought it was phrased nicer than Judge Cowan's. That's exactly what the judge did. Again, judges might disagree. You might find some judges that may say, well, you should have given him 50 months off or 40 months off. You should not have gone beyond the guideline range of 30 months. But this judge was in a unique position to assess this defendant, and he did so. And he did so by addressing the 3-5-5-3 factors. Yes, the argument could be made that maybe he could have been more in-depth and go more in-depth, but he touched on the issue sufficiently to give a clear indication as to where he was going and what caused him to come square down on this 60-month sentence. And that's most of what we can ask the judge to do. And that's exactly what the judge did in this case. Any questions? Thank you. Thank you, Mr. Cowan. Mr. Hodge, rebuttal. First of all, I will have to disagree with the government's conclusion that the judge was in a unique position and that he should be given deference because, first of all, there wasn't a trial on the merits. There was no trial. There was no suppression hearing. The plea was not taken by the judge. It was taken by the magistrate. The probation officer did not take the stand. So that judge, the trial judge, was in no more of a position than this appellate body. The same information this court has is the same information the trial judge had. So I don't see a case where— What is our standard of review? For abuse of discretion. And I believe clearly that the judge here has abused his discretion in the sense that, number one, everything that the judge had considered for enhancement had already been considered by the sentencing guidelines. The $105,000 that was stolen caused an eighth-level enhancement. The age of the child, I mean, the minor being involved, that was an additional two levels enhancement. The fact that there was a prior conviction, that is recognized in the criminal history category, or he still remained in the criminal history category of one. The issue as to whether or not my client had a prior conviction for robbery, that is not correct. He only has a prior conviction for destruction of property. There is no evidence that my client planned anything with Casey. The evidence is he planned with Cruz, Maria Cruz. And what was before the court that is not mentioned in the brief is Maria Cruz and the defendant, the appellant, Mr. Williams, lived together in the same household. And it was Cruz's sister that got the baby for Jermaine Williams. And it was Cruz's sister— —who told Mr. Williams when to go and what time. And at that time, Mr. Williams was unemployed. So— Did you represent Mr. Williams in his prior offense? No, that was in the Superior Court. I was appointed in the district court. I don't know the particulars other than what is in the pre-sentence report. So he was before a state judge, and the state judge was lenient with him. And why—I guess what I'm struggling with in your position is, I assume you don't complain when your client gets a lenient sentence, right? That's a good thing. But I complain when it's unfair, though. Well, just stay with me for one minute. When your client gets a lenient sentence, you don't jump up and down and say, well, this is more lenient than the gurus who put together sentencing guidelines would believe. And if a judge has a right—I mean, I was a trial judge. Colleagues were. We know what it's like to impose a lenient sentence, particularly with a first-time offender. Nothing wrong with that. It makes sense, I think, to most people. But why doesn't it make sense that when you're lenient with someone, and then within a matter of a few years they come back and betray that leniency in such a bold, brazen manner as this case, that the judge doesn't go in the opposite direction as this trial judge did here? Why isn't that perfectly commonsensical and reasonable? Because it was not this particular judge who had been lenient with him in the first place. But he knows another—one of his colleagues was lenient with him. I mean, that's a fact. And not only was he lenient with him, he gave him a slap on the wrist, and your client threw it away. He didn't even do the 150 hours of community service he was supposed to do. He only did one-third of what he was supposed to do. Why can't this judge take that into consideration? Because this judge doesn't know all the facts as to why the first judge did not hold my client in contempt. The first judge, perhaps, was able to gather enough information about his client to realize that he is not as mature or developed mentally as he should be for his age. He may be 21 in number, may be 12. In fact, we don't know. We can only speculate as to why the first trial ended in the—the first conviction— But if his immaturity prevents him from conforming his conduct to the law, all the more reason why an extended sentence is necessary. I'm saying his maturity should be taken into consideration when you speak about him consulting with a minor to commit an offense. And you should also take into consideration that there was no weapon involved. And I think what is really happening here is a dilution of the sentencing process. I think we're going back to how it was before 1987. If the Supreme Court says that the sentencing guidelines is advisory, and then it comes along and says in God that deference should be given to the sentencing judge, but the sentencing judge should look at the various factors to support the recommendations of counsel, whether it be defense counsel or the government. And the government didn't—the court didn't follow the sentencing guidelines, didn't take the recommendation of defense counsel, nor the government. And I think in this case— The government sometimes thinks they control sentencing, but I think we beg to differ. The judge is in charge of sentencing. Yes, but I am saying all of this to say that perhaps this is a test case for every judge to now say, as long as I give some reasonable basis whether or not the appellate court agrees with me or not, as long as I make some degree of sense, then I don't care what the government attorney says, I don't care what defense counsel says, and I don't care what advice the guidelines says. And that is what this case is really about. The precedence is going to set. To ignore everybody and decide as you please like Hubbard was, for the same reason why the sentencing guidelines was put into place, this case was set back to 1986. 1886, it doesn't matter anymore. I think you make an excellent argument, but the fact is we just decided the Tomko case, and he got a 100 percent downward variance, and we upheld that. In Gaul, pretty high-level drug dealing. The guy was looking at 40-plus months, I think 40 to 48 months. He got straight probation. Supreme Court said that's fine. So I think your point has a lot of intellectual force that we are going back, but we may disagree as to whether the Supreme Court is telling us to go back or how far to go back. I did also argue that there was something unique happening in my client's life. He got a baby, you know, his lady got a newborn baby, and he spent all his time babysitting from the time he was released up to the time of sentencing, and that child had an impact on his life, and I argued to the court that rehabilitation doesn't necessarily begin from the time you're physically behind a stone wall called a cell. Sometimes it begins when you start seeing things differently, have an opportunity to see what you're losing. He had a newborn baby, a daughter at the time of sentencing, she was eight months, and I think that that, too, could have been a rational basis for the court to stay within the range that the government recommended. Thank you. Thank you very much. The case was well argued. We will take it under advisement.